UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CRIMINAL ACTION NO. 04-105-C**

**UNITED STATES OF AMERICA,**                                                                             **PLAINTIFF,**

**V.**                               **MEMORANDUM OPINION AND ORDER**

**WILLIAM ASHBY, ET AL.,**                                                     **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on defendant Robert Hurley's exception to the magistrate judge's recommendation that the court decline to suppress evidence seized from his home and its curtilage on the day that a federal arrest warrant was executed against him, and on his motion to suppress that evidence. The court, having reviewed the record and being otherwise sufficiently advised, will deny the defendant's motion to suppress.

**Factual Background**

In November 2003, a team of federal and state law enforcement officers executed a federal arrest warrant at Mr. Hurley's home. On the property, 25 yards from the back of the house were two metal storage sheds of sufficient size to hide a person. An electrical wire ran from the home to one of these sheds. Mr. Hurley claims that these sheds were illegally searched and that evidence from this search was used to obtain a search warrant that produced other incriminating evidence.

Prior to executing the arrest warrant, the officers were told that Mr. Hurley had guns, was potentially dangerous, and might attempt to run from arresting officers. When

the officers arrived at Mr. Hurley's house, some of them knocked at the front door and identified themselves as police. Others were stationed at the rear of the home to prevent anyone from leaving via a back exit. While waiting for a response to their "knock and announce," one of the officers at the front of the house thought he heard a voice and thought he saw a shadow move inside the house. After a few minutes of knocking and announcing their presence, the officers at the front of the house entered through an unlocked side door and arrested Mr. Hurley.

      While the officers at the front of the house were waiting for a response to the knock-and-announce, the officers at the rear, Agent Zito and Officer Green, decided to examine the sheds. This decision was based on the officers' pre-execution intelligence that Hurley might hide from arresting officers, and, because of the nature of the alleged crime, out of a desire to clear the area of anyone that might pose a threat to officer safety. Although the first shed was empty, the officers saw a sheet hanging in the second shed. Fearing that someone might be hiding behind the sheet, one of the officers pulled it down. Behind the sheet, the officers noticed several large metal tanks with blue corrosion around the valves. Based on their experience, they immediately knew that the corrosion was consistent with the improper storage of anhydrous ammonia, an ingredient used in the manufacture of methamphetamine. After they discovered the tanks, they were informed, via walkie-talkie, that Mr. Hurley had been arrested.

      After the arrest, Agent Zito and Officer Green told the other officers about the tanks. One of these officers, Detective Edwards, sampled the air around the tanks using a Drager pump, which showed that there was anhydrous ammonia in the air.

Based in part on the large quantity of anhydrous ammonia, a search warrant issued for Mr. Hurley's residence, and officers discovered methamphetamine lab materials and ingredients.

**Analysis**

Mr. Hurley objects to the search of the sheds because the officers did not "knock and announce" their presence before entering. Because probable cause for the search of his residence was based on evidence seized from the sheds, Mr. Hurley seeks to suppress the results of that search as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963).

The Fourth Amendment affords special protection to the home and areas within the curtilage. *E.g., Oliver v. United States*, 466 U.S. 170, 180 (1984). Even though law enforcement officers may have an arrest warrant, absent exigent circumstances, they must "knock and announce" their presence prior to entering these areas. *See, e.g., United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996); *United States v. Francis*, 646 F.2d 251, 256 (6th Cir. 1981). Officers may dispense with the knock-and-announce requirement where they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile . . . ." *United States v. Banks*, 540 U.S. 31, 36 (2003). Similarly, law enforcement officers may conduct a protective sweep of any area from which an attack may be launched where they have articulable facts which, taken together from rational inferences, would warrant a reasonably prudent officer in believing that the area harbors a potentially dangerous individual. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Protective sweeps must be

cursory and no more extensive than necessary to protect officer safety. *E.g., United States v. Taylor*, 248 F.3d 506, 513-14.

In this case, requiring the officers to knock and announce their presence prior to opening the sheds was potentially both dangerous and futile. Both Agent Zito and Officer Green were worried that an attack could be launched from the sheds. As the magistrate judge noted, the officers were aware that Mr. Hurley carried weapons, and the sheds were made of thin, prefabricated material that would offer little protection from someone wishing to shoot through them. The driveway leading to Mr. Hurley's home was long and fully visible from the outside of his home, and several officers arrived to execute the arrest warrant. This activity would have been sufficient to provide advance notice to anyone in the home, and there was enough time for anyone to flee out the back door. Given that the closest hiding spot for anyone leaving through the back door was one of the sheds, the officers were justified in conducting a cursory sweep of these structures.

Even if the officers were justified in entering the shed, Mr. Hurley argues that it was not necessary for the police to pull down the sheet in the second shed. He also objects to Detective Edwards's use of the Drager pump after his arrest. The court agrees that the officers were justified in removing the sheet to eliminate the possibility that someone was hiding behind it. When the police removed the sheet, they immediately noticed the blue corrosion on the tanks and recognized the corrosion as a sign of improperly stored anhydrous ammonia. Because this evidence was sufficient to support the issuance of a search warrant, the court expresses no opinion as to the legality of Detective Edwards's testing of the air around the tanks. Because the entry

4

into the sheds was proper, there is no reason to suppress the evidence discovered during the execution of the search warrant. Accordingly,

**IT IS ORDERED** that the magistrate judge's report and recommendation is **ACCEPTED** and the defendant's motion to suppress evidence seized from his home (DE 287, 190) is **DENIED**.

Signed on  January 17, 2006

**Jennifer B. Coffman, Judge**
**United States District Court**

into the sheds was proper, there is no reason to suppress the evidence discovered during the execution of the search warrant. Accordingly,

**IT IS ORDERED** that the magistrate judge's report and recommendation is **ACCEPTED** and the defendant's motion to suppress evidence seized from his home (DE 287, 190) is **DENIED**.

Signed on  January 17, 2006

**Jennifer B. Coffman, Judge**
**United States District Court**